GREENBERG TRAURIG, LLP
MARK D. KEMPLE (SBN 145219)
RADHA D.S. KULKARNI (SBN 293996)
1840 Century Park East, 19th Floor
Los Angeles, CA 90067
Telephone:   (310) 586-7700
Facsimile:   (310) 586-7800

Attorneys for Defendant
PANDA RESTAURANT GROUP, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIFER SPARGIFIORE, an individual, for herself and all members of the putative class,<br><br>Plaintiff,<br><br>v.<br><br>PANDA RESTAURANT GROUP, INC., a California Corporation; and DOES 1 through 100, inclusive,<br><br>Defendants. | CASE NO. _____<br>Assigned to The Honorable _____<br><br>**DEFENDANT PANDA RESTAURANT GROUP, INC.'S NOTICE OF REMOVAL PURSUANT TO 28 U.S.C. § 1332(d)(2) (CAFA)**<br><br>Removal Filed:   _____, 2020<br>State Action Filed: December 11, 2019 |

**TO THE COURT, PLAINTIFF, AND HER ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that Defendant Panda Restaurant Group, Inc. ("Panda" or "Defendant") hereby removes the above-captioned action, *Jennifer Spargifiore v. Panda Restaurant Group, Inc*, Case No. 19STCV44438 (the "Action") from the California Superior Court for the County of Los Angeles to the United States District Court for the Central District of California pursuant to 28 U.S.C. §§ 1332(a), 1332(d), and 1446(b) on the grounds articulated below.

## VENUE

1.      The action was filed in the Superior Court of the State of California for the County of Los Angeles. Venue properly lies in the United States District Court for the Central District of California pursuant to 28 U.S.C. §§ 84(c), 1391, 1441(a).

## SERVICE ON THE STATE COURT

2.      Pursuant to 28 U.S.C. § 1446(d), contemporaneously with the filing of this Notice of Removal in the United States District Court for the Central District of California, written notice of such filing will be given by the undersigned to Plaintiff Jennifer Spargifiore's ("Plaintiff") counsel of record, and a copy of the Notice of Removal will be filed with the Clerk of the Los Angeles County Superior Court.

## COMPLIANCE WITH STATUTORY REQUIREMENTS

3.      In accordance with 28 U.S.C. § 1446(a), true and correct copies of all pleadings, process, and orders in the state court file (with the exception of the Complaint and First Amended Complaint which are attached hereto respectively as Exhibits A and B) are attached hereto as <u>Exhibit C</u>.

## PLEADINGS, PROCESS AND ORDERS

4.      On December 11, 2019, Plaintiff, on behalf of herself and others similarly situated, filed a complaint in the Superior Court for the County of Los Angeles, captioned *Jennifer Spargifiore v. Panda Restaurant Group, Inc*, Case No. 19STCV44438 ("Complaint"). A true and correct copy of the Summons and Complaint filed in Los Angeles County Superior Court is attached hereto as <u>Exhibit A</u>.

2

*ACTIVE 53014190v4*

5. On February 19, 2020, Plaintiff, on behalf of herself and others similarly situated, filed a First Amended Complaint ("FAC") in the Superior Court for the County of Los Angeles, with the same caption as her Complaint. A true and correct copy of the FAC is attached hereto as <u>Exhibit B.</u>

6. The FAC seeks to allege nine separately titled causes of action for: (1) unpaid overtime wages; (2) unpaid meal period premiums; (3) unpaid rest period premiums; (4) unpaid minimum wages; (5) final wages not timely paid; (6) non-compliant wage statements; (7) violation of Business and Professions Code section 17200 *et seq.*; (8) failure to reimburse necessary business expenses; and (9) violation of the Private Attorneys General Act of 2004 ("PAGA"). Though not separately titled as a cause of action, the FAC also seeks recovery pursuant to several additional statutes, including Labor Code section 1197.1.

## TIMELINESS OF THE REMOVAL

7. This removal is timely. As the Ninth Circuit Court of Appeal has held and clarified, Class Action Fairness Act of 2005 ("CAFA") removal is timely at any time so long as (1) the face of the complaint does not plainly allege all elements needed for traditional diversity (including the amount in controversy), and (2) plaintiffs have not served some other "paper" which concedes all elements needed for traditional diversity. *See Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1125–26 (9th Cir. 2013) (a removing defendant may remove "on the basis of its own information, provided that it has not run afoul of either of the thirty-day deadlines" set forth in 28 U.S.C. § 1446(b)(1) and (b)(3); "a defendant's subjective knowledge cannot convert a non-removable action into a removable one such that the thirty-day time limit of § 1446(b)(1) or (b)(3) begins to run against the defendant"); *see also Rea v. Michaels Stores Inc.*, 742 F. 3d 1234, 1238 (9th Cir. 2014) (reaffirming *Roth* holding; "We also recently held in *Roth v. CHA Hollywood Medical Center, L.P.*, that the two 30-day periods are not the exclusive periods for removal. 720 F.3d 1121, 1124–25 (9th Cir. 2013). In other words, as long as the complaint or 'an amended pleading, motion, order or other paper' does not reveal that

3

*ACTIVE 53014190v4*

the case is removable, the 30-day time period never starts to run and the defendant may remove at any time."); *see also Taylor v. Cox Commc'ns. California, LLC*, 673 F. App'x 734, 735 (9th Cir. 2016) ("We also hold that Defendants' second Notice of Removal was timely. 'A CAFA case may be removed [by a defendant] at any time, provided that neither of the two thirty-day periods under § 1446(b)(1) and (b)(3) has been triggered.'").

8.    Here, neither the Complaint nor the FAC plainly allege all elements needed for removal, and Plaintiff has not served some other "paper" which concedes all elements needed for removal.  For example, Plaintiff does not allege an amount in controversy. Likewise, Plaintiff does not allege minimum diversity.  This removal is therefore timely.

## NATURE OF THIS REMOVAL PLEADING

9.    Panda hereby provides "a short and plain statement of the grounds for removal" pursuant to 28 U.S.C. § 1446(a). In this regard, a notice of removal "need not contain evidentiary submissions." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547. 551 (2014). Rather, "if the plaintiff contests the defendant's allegation . . . both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id.* at 553-54. As recently held by the Ninth Circuit:

> "when a notice of removal plausibly alleges a basis for federal court jurisdiction, a district court may not remand the case back to state court without first giving the defendant an opportunity to show by a preponderance of the evidence that the jurisdictional requirements are satisfied."

*Arias v. Residence Inn*, 936 F.3d 920, 924 (9th Cir. 2019) (rejecting *sua sponte* remand). In the event that the Court requires that Panda prove the facts alleged in this pleading, or to otherwise establish jurisdiction, Panda is prepared to do so. Similarly, Defendant is prepared to establish this Court's jurisdiction in response to a motion to remand filed by Plaintiff seeking to challenge the factual basis for this Court's jurisdiction (though Defendant doubts any such challenge could or will be made, as the facts establishing this Court's jurisdiction cannot be reasonably disputed), or in response to a Court order.

4

*ACTIVE 53014190v4*

## STATEMENT OF THIS COURT'S JURISDICTION

10.     Federal courts have a "virtually unflagging obligation" to exercise the jurisdiction given to them. *Colorado River Water Conservation Dist. v. U. S.*, 424 U.S. 800, 817 (1976). *See also Cohens v. Virginia*, 19 U.S. 264, 404, 5 L. Ed. 257 (1821) (federal courts "have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given"); *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716, 116 S. Ct. 1712, 135 L. Ed. 2d 1 (1996) (federal courts "have a strict duty to exercise the jurisdiction that is conferred upon them by Congress").

11.     Further, CAFA jurisdiction – at issue here – is a favored form of jurisdiction and uniquely not subject to any antiremoval presumption. Through CAFA, Congress has expressed its "overall intent to strongly favor the exercise of federal jurisdiction over class actions with interstate ramifications," *Jordan v. Nationstar Mort. LLC,* 781 F.3d 1178, 1183 (9th Cir. 2015) (*quoting Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014), with "all doubts resolved in favor of exercising jurisdiction over the case." *Dutcher v. Matheson*, 840 F.3d 1183, 1190 (10th Cir. 2016). *See also Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1163 (11th Cir. 2006) (same); *Reece v. AES Corp.*, 638 Fed.Appx. 755, 767–68 (10th Cir. 2016) (same). Unlike other forms of removal jurisdiction, "no antiremoval presumption attends cases invoking CAFA." *Dart Cherokee,* 135 S. Ct. at 554. *See also Allen v. Boeing Co.*, 784 F.3d 625, 633 (9th Cir. 2015) ("there was no presumption against [CAFA] removal jurisdiction"; CAFA should be read "with a strong preference that interstate class actions should be heard in a federal court").

12.     This Court has original jurisdiction over this case under CAFA, 28 U.S.C. § 1332(d), and this case may be removed pursuant to the provisions of 28 U.S.C. § 1441(a). Specifically, this is a putative civil class action wherein: (1) the proposed class contains at least 100 members; (2) no Defendant is a state, state official or other governmental entity; (3) the total amount in controversy for all putative class members exceeds $5 million; and (4) there is minimum diversity among the parties to this action as

5

*ACTIVE 53014190v4*

defined by CAFA. Therefore, CAFA authorizes removal of this action in accordance with 28 U.S.C. § 1446, and this Court should exercise the jurisdiction given to it under CAFA.

## The Proposed Class Contains at Least 100 Members

13.    Plaintiff's proposed class contains in excess of 100 members. Plaintiff brings this action on behalf of a class and reserves the right to name subclasses. Plaintiff brings this action on behalf of "[a]ll current and former hourly-paid or non-exempt employees employed by Defendants within the State of California at any time during the period from December 11, 2015 to final judgment." [Ex. B, FAC, ¶ 35.] Panda has employed substantially more than 100 persons in California as non-exempt employees within four years of the filing of this action. As such, the membership in this putative class exceeds 100 persons.

## Defendant Is Not a Governmental Entity

14.    Defendant is not a state, state official, or other governmental entity.

## Minimal Diversity Exists

15.    Title 28 U.S.C. § 1332(d)(2), provides that CAFA's minimum diversity requirement is satisfied if "any member of a class of plaintiffs is a citizen of a State different from any defendant…."

16.    Panda is a citizen of California. For diversity purposes, a corporation "shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1). To determine a corporation's principal place of business, courts apply the "nerve center" test, which deems the principal place of business to be the state in which the corporation's officers direct, control, and coordinate the corporation's activities. *The Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1192 (2010). A corporation's principal place of business will typically be where the corporation maintains its headquarters. *See id*.

17.    Panda is incorporated under the laws of the State of California, and its corporate headquarters, where its officers reside and direct, control, and coordinate the corporation's activities, is in Rosemead, California. These statements are true at the time

6

DEFENDANT'S NOTICE OF REMOVAL

of the filing of the original Complaint in this action, at the time the FAC was filed, and are true now. Panda is therefore a citizen of the States of California.

18.    Defendant is aware of a putative class member, who at the time of the filing of the Complaint, the FAC, and this Removal, was and is a citizen of the United States, is not a citizen of California, and is a citizen of a State other than California. This putative class member was employed by Panda in California as a non-exempt worker within the last four years. This putative class member was born and raised in a State other than California, and all of his nuclear and extended family still live in that non-California State. This putative class member has always considered himself to be a citizen of that non-California State, and not a citizen of California. At the time of this filing, and at the time this action was initially filed, he has resided and does reside in that non-California State. At the time of this filing, and at the time this action was initially filed, he has maintained a driver's license issued by that non-California State. Additionally, at the time this action was initially filed, this putative class member was and is registered to vote in that non-California State, and did and does pay income and local taxes in that non-California State. At the time of this filing, and at the time this action was initially filed, his current banking and financial accounts were and are in that non-California State.  At the time of this filing, and at the time this action was initially filed, he did not and does not own any real estate in California nor does he maintain any personal property in California. At the time of this filing, and at the time this action was initially filed, he intended and intends to remain a resident and citizen of that non-California State for the foreseeable future.

19.    Because one or more putative class members is a citizen of a state other than California, and Defendant is a citizen of California only, at least one putative class member is diverse from a defendant and CAFA's minimal diversity requirement is met.

**The Amount Placed in Controversy on the Putative Class Claims Exceeds $5,000,000**

20.    The amount in controversy is measured through the date of removal, not

7

DEFENDANT'S NOTICE OF REMOVAL

merely as of the date of the filing of the complaint (*Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 417-18 (9th Cir. 2018)), with the exception that attorney fees (also within the amount in controversy) are projected forward and through the date of trial. *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 795 (9th Cir. 2018).

21.  The amount in controversy concerns "what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will actually owe." *Korn v. Polo Ralph Lauren Corporation*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008) (quoting *Rippee v. Boston Market Corp.*, 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005)). "In measuring the amount in controversy, 'a court must assume that the allegations of the complaint are true and assume that a jury will return a verdict for the plaintiff on all claims made in the complaint.'" *Korn*, 536 F. Supp. 2d at 1205 (quoting *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002)). Further, "in assessing the amount in controversy, a removing defendant is permitted to rely on a chain of reasoning that includes assumptions . . . if it is founded on the allegations of the complaint." *Arias*, 936 F.3d at 925 (9th Cir. 2019). The amount in controversy includes potential general and special damages, and penalties, as well as attorney's fees if recoverable by statute or contract. *See, e.g.*, *Richmond v. Allstate Ins. Co.*, 897 F. Supp. 447, 449–50 (S.D. Cal. 1995); *Miller v. Michigan Millers Ins. Co.*, 1997 WL 136242 at *4–5 (N.D. Cal. 1997); 28 U.S.C. §§ 1332(d)–(e), 1453, 1711–15.[1]

22.  Further, in calculating the amount placed in controversy, defenses that a defendant may assert—such as a statute of limitation—are not considered. *Riggins v. Riggins*, 415 F.2d 1259, 1262 (9th Cir. 1969) ("[T]he possibility of such a defense being valid does not affect the jurisdiction of the district court to hear and determine the

[1] Defendant denies any liability to Plaintiff or to the putative classes that she seeks to represent, and denies that Plaintiff or the putative class members are entitled to recover any of the relief requested in the Complaint. Defendant in no way concedes by this removal that Plaintiff's claims and alleged putative classes may be certified for class treatment pursuant to Fed. R. Civ. P. 23.

8

DEFENDANT'S NOTICE OF REMOVAL

*ACTIVE 53014190v4*

controversy"); *Geographic Expeditions, Inc. v. Estate of Lhotka*, 599 F.3d 1102, 1108 (9th Cir. 2010) (that "a defendant might have a valid defense that will reduce recovery to below the jurisdictional amount does not mean the defendant will ultimately prevail on that defense"); *Flores v. Marriott Resorts Hosp. Corp.*, 2019 U.S. Dist. LEXIS 6604, *9 (C.D. Cal. Jan. 7, 2019) ("affirmative defenses that have not been asserted at the time of removal are not relevant for calculating the amount in controversy for removal purposes"; "Plaintiffs' claims are not limited to the year prior to filing this action for purposes of calculating the jurisdictional amount in controversy"); *Pagel v. Dairy Farmers of Am. Inc*, 2013 WL 12166177, *6 (C.D. Cal. July 9, 2013) (the Ninth Circuit has admonished against preliminary adjudication of affirmative defenses and defenses should not pose a barrier to jurisdiction); *Gutierrez v. Stericycle, Inc.*, 2017 WL 599412, *15 (C.D. Cal. Feb. 14, 2017) (affirmative defenses may not be considered in calculating the amount in controversy); *Hernandez v. Towne Park, Ltd.*, 2012 WL 2373372, *10 (C.D. Cal. June 22, 2012) ("the fact that [defendant] may assert a limitations defense does not limit the relief sought in the complaint"); *Lara v. Trimac Transp. Services (Western) Inc.*, 2010 WL 3119366, *3 (C.D. Cal., August 6, 2010) ("affirmative defenses . . . may not be invoked to demonstrate that the amount in controversy is actually less than the jurisdictional limits.").

23. Though Defendant concedes no liability on Plaintiff's claims, assuming that all of Plaintiff's allegations are true and that Plaintiff will gain a full recovery on them, Plaintiff's putative class claims place in controversy a sum greater than $5,000,000.

24. The FAC seeks to allege nine separately titled causes of action for: (1) unpaid overtime wages; (2) unpaid meal period premiums; (3) unpaid rest period premiums; (4) unpaid minimum wages; (5) final wages not timely paid; (6) non-compliant wage statements; (7) violation of Business and Professions Code section 17200 *et seq.*; (8) failure to reimburse necessary business expenses; and (9) violation of the PAGA. Though not separately titled as a cause of action, the FAC also seeks recovery

pursuant to several additional statutes, including Labor Code section 1197.1. Plaintiff pursues each of these claims on behalf of the putative class.

25.    Plaintiff alleges that Panda is jointly liable with Plaintiff's direct employer, based on a number of theories set forth in paragraph 7 of her FAC. Plaintiff was employed by Panda Express, a subsidiary of Defendant Panda Restaurant Group, Inc. Plaintiff alleges that Panda is liable for its actions as its "agents, partners, joint venturers, representatives, servants, employees, successors-in-interest, co-conspirators and assigns" who "at all times relevant hereto were acting within the course and scope of their authority as such agents, partners, joint venturers, representatives, servants, employees, successors, co-conspirators and assigns, and that all acts or omissions alleged herein were duly committed with the ratification, knowledge, permission, encouragement, authorization and consent of each defendant designated herein." [Ex. B, FAC ¶7.] These entities are defined and referred to in the FAC as "Defendants". [FAC ¶9.] The class definition, in turn, is: "All current and former hourly-paid or non-exempt employees employed by Defendants within the State of California at any time during the period from December 11, 2015 to final judgment." [FAC, ¶ 35.]

26.    Plaintiff's FAC alleges these "Defendants" engaged in "systematic schemes" and "uniform" policies that required Plaintiff and the putative class to work off the clock and thereby suffer broad "wage abuse." [FAC, ¶ 17.]

27.    For purposes of this removal, however, we focus only on Plaintiff's contention that Defendant "failed to pay Plaintiff and the other class members for the time spent attending external training seminars." [FAC ¶ 26.]

28.    **Failure to Timely Pay All Wages Due Upon Separation (Labor Code section 203)**. Plaintiff's contends that Defendant "failed to pay Plaintiff and the other class members for the time spent attending external training seminars." [FAC ¶ 26.] Plaintiff further contends that Defendant "failed to compensate Plaintiff and the other class members for all hours worked associated with attending and traveling to and from external training seminars," including failure to "pay overtime wages to Plaintiff and the

10

ACTIVE 53014190v4

other class members for time associated with attending and traveling to and from external training seminars." [*Id.*, ¶¶ 27, 29, 30.]

29.    Plaintiff also brings a derivative claim for Waiting Time Penalties, based on the foregoing failures to pay wages. [FAC ¶¶ 73-78.] Though any statute of limitations defense is not taken into account in calculating the amount in controversy, even limiting the calculation to the period four years before the filing of the initial complaint, and assuming as true Plaintiff's allegations that all persons who received a promotion were required to attend an external training seminar, there were in excess of 4,000 putative class members in California who received a promotion (and thus, per Plaintiff's contentions, were required to attend a multi-day training course without payment of minimum wages, overtime wages, etc.). Further, in excess of 2,000 of these employees who received a promotion were former employees. Accepting these allegations as true, each of these former employees is entitled to 30 days wages pursuant to Labor Code section 203.

30.    The average rate of pay during this time period for putative class members exceeded $14 per hour. These average putative class members worked in excess of 6 hours per work day during this period. Accordingly, this claim alone places in controversy in excess of $5,040,000 in waiting time payments (per Labor Code section 203) as follows: 2,000 persons x $14 x 6 hours x 30 days = **$5,040,000**.

31.    **Uncompensated Off-the-Clock Work / Minimum and Overtime Wages**. Again, focusing only on Plaintiff's contention that Defendant "failed to pay Plaintiff and the other class members for the time spent attending external training seminars." [FAC ¶ 26.] Plaintiff contends that Defendant "failed to compensate Plaintiff and the other class members for all hours worked associated with attending and traveling to and from external training seminars," including failure to "pay overtime wages to Plaintiff and the other class members for time associated with attending and traveling to and from external training seminars." [*Id.*, ¶¶ 29, 30.] Plaintiff further alleges that "Defendants required Plaintiff and other class members to attend <u>multi-day external</u>

11

*ACTIVE 53014190v4*

training seminars prior to receiving promotions." [FAC ¶ 24.] Artificially limiting this claim to just four years before the action was filed, using straight time only, and conservatively assuming each putative class members spent just two hours of time attending and traveling to multi-day seminars (which Plaintiff alleges were required), this theory and allegations alone place in controversy in excess of $112,000 in unpaid wages, as follows: in excess of 4,000 putative class members x 2 hours x $14 = **$112,000**.

32.    **Liquidated Damages**. In addition, based on the foregoing Plaintiff seeks liquidated damages for any such unpaid work measured at the minimum wage pursuant to Labor Code section 1194.2. [FAC ¶ 29.] During the class period, the average California minimum wage exceeded $10 per hour. Accordingly, this theory of recovery and allegations alone place in controversy in excess of an additional $80,000 in liquidated damages, as follows: 4,000 putative class members x 2 hours x $10 = **$80,000**.

33.    **Inaccurate Wage Statements**. Plaintiff also seeks to allege a derivative claim for inaccurate wage statements. [FAC ¶¶ 79-82.] Specifically, Plaintiff alleges Defendant failed "to include the correct total number of hours worked by Plaintiff and the other putative class members" and "to include the correct hourly rate for time associated with attending and traveling to and from external training seminars." As with the waiting time claim, this claim is based on Plaintiff's allegations that putative class members were required to attend and travel to multi-day training seminars to receive a promotion. Plaintiff seeks a statutory penalty, defined as at least $50 for each initial wage statement to a class member, and $100 per wage statement per class member for each subsequent violation pursuant to Labor Code section 226(e). [FAC Prayer 39.] Assuming each putative class member received just one inaccurate wage statement relating to these uncompensated external seminars, and applying only the lower penalty rate, yields in excess of 4,000 wage statements for which Plaintiff concludes a penalty payment is due, and thereby places in controversy in excess of an additional $200,000 in penalties as follows: 4,000 x $50 = **$200,000**. Obviously, application of the higher penalty sought by Plaintiff for subsequent pay periods would yield a higher total.

12

*ACTIVE 53014190v4*

34.  **Plaintiff's Additional Claims**. The total of the sums calculated above exceeds $5 million in controversy. Even then, the foregoing addresses only a portion of the claims pursued by Plaintiff. For example, these figures address only claims for putative class members who were promoted, though Plaintiff seeks to represent all persons who attended external seminars (whether promoted or not). Further, even for this limited set of persons, these figures do not account for all claims asserted, including Plaintiff's contention that Defendant failed to provide all required meal and rest periods. [FAC ¶¶ 18, 48-66.] Nor do they account for Plaintiff's overtime allegations. Though calculating the amounts "in controversy" on Plaintiff's remaining claims is uncertain, obviously they would place additional amounts in controversy.

35.  **Prospective Injunctive Relief**. Also, and on top of the foregoing, based on these allegations, Plaintiff seeks prospective injunctive relief. [FAC, Prayer for relief at ¶ 48 (requesting an "injunctive relief to ensure compliance with this section…").] "In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 347 (1977); *Luna v. Kemira Specialty, Inc.*, 575 F. Supp. 2d 1166, 1172 (C.D. Cal. 2008) (same). The "amount in controversy" requirement is satisfied where either plaintiff can gain or defendant can lose the jurisdictional amount. *See In re Ford Motor Co./Citibank (South Dakota)*, 264 F.3d 952, 958 (9th Cir. 2001) (holding that, for purposes of calculating amount in controversy, "[t]he value of the thing sought to be accomplished by the action may be related to either or any party to the action"). Here, Plaintiff seeks injunctive relief prohibiting Defendant from engaging in practices that supposedly violate the Labor Code. [FAC, Prayer for relief at ¶ 48.] Even if such relief lasts only so long as the four-year period preceding the filing of this action, Plaintiff's request for prospective injunctive relief would **double** the amounts placed in controversy on the claims discussed above.

36.  **Attorney Fees through the Life of the Litigation**. Further, Plaintiff seeks class-wide recovery of statutory attorney fees. [*See e.g.*, FAC, Prayer for Relief ¶¶ 8, 15,

13

*ACTIVE 53014190v4*

22, 28, 35, 40, 43, 49, 51.] The amount in controversy includes all reasonable attorney fees not merely through the date of removal, but through resolution of the action. *See Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1034 (N.D. Cal. 2002) ("Plaintiff insists that attorneys' fees are limited to those accrued at time of removal, maintaining that additional fees are too speculative. Plaintiff is mistaken. [In *Galt*] [t]he Ninth Circuit clearly . . . anticipated that district courts would project fees beyond removal."); *Ponce v. Med. Eyeglass Ctr., Inc.,* 2015 WL 4554336, at *3 (C.D. Cal. July 27, 2015) (adopting *Simmons* reasoning and holding that "the Court agrees with defendant that a conservative estimate of attorneys' fees likely to be incurred through the conclusion of this case properly factors into the amount in controversy determination"); *Sasso v. Noble Utah Long Beach, LLC,* 2015 WL 898468, at *5 (C.D. Cal. Mar. 3, 2015) (holding attorneys' fees through trial are properly included in amount in controversy consideration; "post-removal attorneys' fees . . . are part of the 'total amount at stake'"); *Sawyer v. Retail Data, LLC,* 2015 WL 3929695, at *3 (C.D. Cal. Apr. 29, 2015) (same).[2]

37.    Based on past experience, the pendency and scope of this action, and the issued raised by the pleading, we reasonably estimate that Plaintiff's counsel will seek to recover up to six figures in fees in this action, or more. *See e.g. Garnett v. ADT LLC,* 74 F. Supp. 3d 1332, 1338 (E.D. Cal. 2015) (in determining whether amount in controversy

---

[2] *See also Pulera v. F&B, Inc*., 2008 WL 3863489, at *4 (E.D. Cal. 2008) ("While the amount in controversy is determined at the time an action commences, where attorney's fees are recoverable by statute, this determination includes a reasonable estimate of the attorney's fees likely to be incurred."); *Brady v. Mercedes-Benz*, 243 F. Supp. 2d 1004, 1011 (N.D. Cal. 2002), ("[w]here the law entitles the prevailing plaintiff to recover reasonable attorney fees, a reasonable estimate of fees likely to be incurred to resolution is part of the benefit permissibly sought by the plaintiff and thus contributes to the amount in controversy."); *Tompkins v. Basic Research LLC*, 2008 WL 1808316, at *4 (E.D. Cal. 2008) (the "amount in controversy includes a reasonable estimate of attorneys' fees likely to be incurred"); *Celestino v. Renal Advantage Inc.*, 2007 WL 1223699, at *4 (N.D. Cal. 2007) ("the amount in controversy includes not only damages accrued up to the time of removal, but also a reasonable assessment of damages likely to be accrued after the time of removal").

14

DEFENDANT'S NOTICE OF REMOVAL

exceeded $5 million for purposes of CAFA removal, the court found that an attorneys' fees estimation of 25 percent "is a reasonable one"; "this equates to a fee of approximately $1,016,200. The total amount in controversy thus exceeds $5 million."). Based only on the claims set forth above and conservatively calculated, which total in excess of **$5,432,000** in controversy, and without regard to other relief sought including injunctive relief, a 25% fee recovery on such claims adds *another* **$1,358,860** to the quantified amount "in controversy," in excess of **$6,790,000**.

38.    Plainly, the amount placed "in controversy" on these putative class claims, even based on the limited analysis above, exceeds $5,000,000.

## NO ADMISSION

39.    Panda admits no liability to Plaintiff or to the putative classes she seeks to represent, does not admit that Plaintiff has stated a claim, does not admit that Plaintiff can recover on her theories and the statutes she cites, does not admit that Plaintiff is an adequate class representative for the putative classes that she seeks to represent, and does not admit that Plaintiff or the putative class members are entitled to recover the damages, penalties, and other relief requested in the Complaint or FAC. Panda also in no way admits that the instant action satisfies the requirements for class certification.

40.    This action meets all of CAFA's requirements for removal, and this removal pleading is both timely and proper. WHEREFORE, the action is hereby removed to this Court from the Superior Court of the State of California, Los Angeles County.

Respectfully submitted,

Dated:  October 27, 2020        GREENBERG TRAURIG, LLP

By        /s/ *Mark D. Kemple*
Mark D. Kemple
Attorneys for Defendant
PANDA RESTAURANT GROUP, INC.

15

DEFENDANT'S NOTICE OF REMOVAL

*ACTIVE 53014190v4*