GREENBERG TRAURIG, LLP
MARK D. KEMPLE (SBN 145219)
RADHA D.S. KULKARNI (SBN 293996)
1840 Century Park East, 19th Floor
Los Angeles, CA 90067
Telephone:   (310) 586-7700
Facsimile:   (310) 586-7800

Attorneys for Defendant
PANDA RESTAURANT GROUP, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIFER SPARGIFIORE, an individual, for herself and all members of the putative class,<br><br>Plaintiff,<br><br>v.<br><br>PANDA RESTAURANT GROUP, INC., a California Corporation; and DOES 1 through 100, inclusive,<br><br>Defendants. | CASE NO. 2:20-cv-09837-AB-MRW<br><br>Assigned to The Honorable André Birotte, Jr.<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OF PLAINTIFF'S INDIVIDUAL CLAIMS AND STAY ACTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT; DECLARATIONS OF STANLEY LIU AND SANDY LICEAGA**<br><br>Date:  December 4, 2020<br>Time: 10:00 a.m.<br>Dept: 7B<br><br>Removal Filed:      October 27, 2020<br>State Action Filed: December 11, 2019 |

MOTION TO COMPEL ARBITRATION OF INDIVIDUAL CLAIMS AND STAY

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD**:

**PLEASE TAKE NOTICE THAT** on December 4, 2020 at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 7B of the United States District Court, Central District of California, located at 350 W. 1st Street, Los Angeles, California, Defendant Panda Restaurant Group, Inc. (herein, "Defendant") will have heard its Motion to Compel Arbitration of Plaintiff's Individual Claims (Counts 1-8) and, if necessary or applicable, stay any remaining part of the action. Defendants will and hereby do move the Court pursuant to the Federal Arbitration Act (9 U.S.C. §§ 1, *et seq.*) for an order:

> Compelling Plaintiff to individually arbitrate the claims found as counts 1–8 in her First Amended Complaint ("FAC") and staying the balance of the action.

[By separate motion brought under FRCP Rule 12(f), Defendant has requested that all class allegations be stricken and. by alternative motion under 12(b)(6), asks – in the event the individual claims are not sent to arbitration and the Private Attorneys General Act ("PAGA") claim stayed – that all her claims be dismissed for failure to properly allege her claims in accordance with federal pleading standards.]

Good cause exists to compel these claims to arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, which applies to workers engaged in interstate commerce. [*See* Declaration of Stanley Liu, ¶¶ 3-6.] On August 10, 2016, Plaintiff voluntarily signed an "Arbitration Agreement" in which she expressly agreed in writing to resolve her individual employment-related claims exclusively in arbitration before the American Arbitration Association ("AAA") on an individual basis, and specifically agreed that the arbitrator shall not have the power or jurisdiction to hear those claims as a class action. Plaintiff further agreed that for any non-arbitrable claims brought with arbitrable claims, such as her PAGA claim, she will request that the court stay litigation of the claim pending arbitration of the arbitrable claims.

*ACTIVE 53052769v2*

This Motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities, the Declarations of Sandy Liceaga and Stanley Liu, all pleadings in this action, and such other written and oral argument as the Court may entertain on this Motion. This motion is filed following the October 27, 2020 informal conference of counsel that took place in compliance with Central District of California Local Rule 7-3.

Respectfully submitted,

Dated:  November 3, 2020          GREENBERG TRAURIG, LLP

By          *Mark D. Kemple*

Mark D. Kemple
Radha D.S. Kulkarni
Attorneys for Defendant
PANDA RESTAURANT GROUP, INC.

2

MOTION TO COMPEL ARBITRATION OF INDIVIDUAL CLAIMS AND STAY

# TABLE OF CONTENTS

**Page**

I.    STATEMENT OF ISSUES RAISED BY THIS MOTION ........................................5

II.   RELEVANT PORTIONS OF PLAINTIFF'S ARBITRATION
      AGREEMENT ........................................................................................................6

III.  THE COURT SHOULD COMPEL PLAINTIFF'S CLAIMS TO
      INDIVIDUAL ARBITRATION UNDER 9 U.S.C. § 2 ..........................................8

      A.    There Is A Valid Arbitration Agreement Between The Parties. ...................9

            1.    Plaintiff and Defendant Entered into a Valid Arbitration
                  Agreement. ........................................................................................9

            2.    Though It is Not Defendant's Burden to Address Here, Plaintiff
                  in Fact Has No Defense to Enforcement of the Arbitration
                  Agreement. ......................................................................................10

                  a.    The Agreement is Not Procedurally Unconscionable ..............11

                  b.    The Agreement is Not Substantively Unconscionable ............12

                  c.    The Agreement's Class Action Waiver is Enforceable ...........14

      B.    The Agreement Requires Arbitration Of All Of Plaintiff's Individual
            Claims. .......................................................................................................15

      C.    Plaintiff's PAGA Claim Should Be Stayed Pending Individual
            Arbitration. ................................................................................................16

IV.   CONCLUSION ...................................................................................................17

i

ACTIVE 53052769v2

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011)......................................................................................8, 13

*Brennan v. Opus Bank*,
  796 F.3d 1125 (9th Cir. 2015) ........................................................................5, 8

*Canela v. Costco Wholesale Corporation*,
  971 F.3d 845 (9th Cir. 2020) ...........................................................................16

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
  207 F.3d 1126 (9th Cir. 2000) ...........................................................................8

*Epic Sys. Corp. v. Lewis*,
  200 L. Ed. 2d 889 (U.S. 2018).................................................................8, 14, 15

*Ferguson v. Corinthian Colleges, Inc.*,
  733 F.3d 928 (9th Cir. 2013) ............................................................................15

*First Options of Chi., Inc. v. Kaplan*,
  514 U.S. 938 (1995)............................................................................................9

*Jacobson v. Snap-on*
  2015 WL 8293164 (N.D. Cal. 2015) ................................................................17

*Moses J. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983)..........................................................................................8, 15

*Oracle Am., Inc. v. Myriad Grp. A.G.*,
  724 F.3d 1069 (9th Cir. 2013) .........................................................................15

*Poublon v. C.H. Robinson Co.*,
  846 F.3d 1251 (9th Cir. 2017) .........................................................................11

*Rent-A-Ctr., W., Inc. v. Jackson*,
  561 U.S. 63 (2010).............................................................................................8

**State Cases**

*Arias v. Superior Court*,
  46 Cal. 4th 969 (2009) .....................................................................................17

ii

*Armendariz v. Found. Health Psychcare Services, Inc.*,
    24 Cal. 4th 83 (2000) ...............................................................11, 12, 13, 14

*Franco v. Arakelian Enterprises, Inc.*,
    234 Cal. App. 4th 947 (2015) ........................................................14, 15, 17

*Lagatree v. Luce, Forward, Hamilton & Scripps*,
    74 Cal. App. 4th 1105 (1999) .................................................................12

*Macaulay v. Norlander*,
    12 Cal. App. 4th 1 (1992) .......................................................................9

*Marenco v. DirecTV LLC*,
    233 Cal. App. 4th 1409 (2015) ...............................................................15

*Metters v. Ralphs Grocery Co.*,
    161 Cal. App. 4th 696 (2008) .................................................................10

*Roman v. Super. Ct.*,
    172 Cal. App. 4th 1462 (2009) ...............................................................11

*Stewart v. Preston Pipeline Inc.*,
    134 Cal. App. 4th 1565 (2005) .................................................................9

**Federal Statutes**

9 U.S.C. § 2 .................................................................................................8

9 U.S.C. § 3 ...........................................................................................5, 17

15 U.S.C. § 7001 .......................................................................................10

15 U.S.C. § 7001(a) ...................................................................................10

**State Statutes**

California Business & Professions Code § 17200 ...................................8, 16

California Civil Code § 1633.7(a) .............................................................10

California Labor Code § 201 ..................................................................8, 16

California Labor Code § 202 ..................................................................8, 16

California Labor Code § 226(a) .............................................................8, 16

iii

MOTION TO COMPEL ARBITRATION OF INDIVIDUAL CLAIMS AND STAY

ACTIVE 53052769v2

California Labor Code § 226.7 ...................................................................8, 16

California Labor Code § 1194 ....................................................................8, 16

California Labor Code § 1197 ....................................................................8, 16

California Labor Code § 1197.1 .................................................................8, 16

California Labor Code § 1198 ....................................................................8, 16

California Labor Code § 2800 ....................................................................8, 16

California Labor Code § 2802 ....................................................................8, 16

**Rules**

Federal Rules of Civil Procedure, Rule 12(f) ....................................................5

MOTION TO COMPEL ARBITRATION OF INDIVIDUAL CLAIMS AND STAY

*ACTIVE 53052769v2*

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   STATEMENT OF ISSUES RAISED BY THIS MOTION

The instant motion seeks straightforward relief. Plaintiff Jennifer Spargifiore ("Plaintiff") was formerly a non-exempt employee of Defendant Panda Restaurant Group, Inc. ("Defendant"). With the exception of her claim under the Private Attorneys General Act ("PAGA"), Plaintiff agreed to arbitrate the claims she is asserting on an individual basis via the arbitration agreement in the "My VOICE Matters Program" (the "Agreement"). [*See* Declaration of Sandy Liceaga ("Liceaga Decl."), ¶¶ 4-9; Exs. A-B.] Plaintiff also specifically agreed that the arbitrator shall not have the power or jurisdiction to hear those claims as a class action.

On December 11, 2019, Plaintiff filed a Class Action Complaint against Defendant, alleging various Labor Code violations. On February 19, 2020, Plaintiff filed a First Amended Class Action Complaint ("FAC") and added a claim for PAGA penalties. All of Plaintiff's individual claims (which she also seeks to have certified for class treatment) arise out of her employment with Defendant. Her Agreement requires her to submit those clams to binding, individual arbitration. As such, and as recently confirmed by the U.S. Supreme Court, these claims should be compelled to arbitration under the Federal Arbitration Act ("FAA"), and her PAGA claims should be stayed pending resolution of that arbitration.

Under the FAA, the Court must compel arbitration where (1) "there is an agreement to arbitrate between the parties" and (2) "the agreement covers the dispute." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)). Both elements are met here. Further, as discuss in the concurrent Rule 12(f) motion, Plaintiff's class allegations should be dismissed. Finally, the balance of the action (including the PAGA claim) should be stayed pending resolution of the arbitration on the Labor Code section claims that underlie that PAGA claim. *See* 9 U.S.C. § 3.

ACTIVE 53052769v2

## II.     RELEVANT PORTIONS OF PLAINTIFF'S ARBITRATION AGREEMENT

Plaintiff worked for Panda Express, Inc., a subsidiary of Defendant, as a non-exempt or hourly-paid employee in California. [FAC, ¶ 10.] As part of her onboarding process, Defendant, as it does with all new hires, asked Plaintiff to review and sign the Acknowledgement Form for the Agreement, but in the event that Plaintiff wanted to "opt out" of the Agreement, Plaintiff had 60 days to do so by notifying Defendant. [Liceaga Decl., ¶¶ 9-10, Exs. A-C.]

The Agreement made clear to associates, including Plaintiff, that all employment disputes, with limited exceptions including claims made pursuant to PAGA, were subject to arbitration:

**Claims Subject to or Excluded from Arbitration**.

Except as otherwise limited, all employment-related legal disputes, controversies or claims arising out of, or relating to, employment or cessation of employment, whether arising under federal, state or local decisional or statutory law ("Employment-Related Claims"), shall be settled exclusively by final and binding arbitration…

[*Id.*, Ex. A, p. 7.]  Concerning the limited/excluded claims:

The Arbitrator shall not have the power or jurisdiction to hear an arbitration as a class action, collective action or representative action, whether or not the claim is alleged by the Associate in a "private attorney general" capacity.

[*Id.*, p. 11.] Finally, the Agreement provides that should Plaintiff seek to pursue a non-arbitrable claim – such as a PAGA claim – the Court shall stay the non-arbitrable claim, to be resolved after the arbitration:

If a party files a lawsuit in court involving claims that are, and other claims that are not, subject to arbitration under Step 4, such party shall request the court to stay litigation of the nonarbitrable claims and require that arbitration take place with respect to those claims subject to arbitration….

[*Id.* at p. 8.]  Finally, the agreement provides that should any of these provisions be

6

*ACTIVE 53052769v2*

held to be unlawful, they may be severed: "In the event of severance with respect to a particular rule or procedure, the remainder of these rules and procedures shall not be affected." [*Id*. at p. 14.]

Although not required by law, the Agreement – signed on August 10, 2016 – expressly states that associates may choose to "opt out" of the Agreement within 60 days of the effective date or their hire date, whichever is later. Specifically, in this regard, the Agreement provides:

> All new Associates agree to be covered by the MVM Program, including Arbitration (Step 4), by accepting employment with the Company on or after June 29, 2012 (the 'Effective Date'). However, Arbitration —Step 4 is completely voluntary. New Associates are given the option to exclude themselves from Arbitration – Step 4 by completing an 'opt out' election form within 60 calendar days of the Effective Date or their hire date, whichever is later.

[*Id*. at p. 5.]

On or about August 10, 2016, Plaintiff electronically acknowledged that she read and understood the contents of the Agreement and agreed to be bound by it. [Liceaga Decl., ¶ 8.] Plaintiff did not thereafter submit a request to opt out of the Agreement. [*Id*. at ¶ 10.]

Nonetheless, Plaintiff has initiated this action in Los Angeles Superior Court pursuing individual arbitrable claims, though improperly on a class basis, and pursuing a PAGA claim (subject to stay). Given the current case and controversy between the parties on Plaintiff's individual claims, Defendant has initiated an arbitration pursuant to the Agreement asserting its counterclaims and seeking declaratory relief that it did not engage in Labor Code violations concerning Plaintiff. [Ex. 1.]

Accordingly, and pursuant to the terms of the parties' Agreement, Plaintiff's individual claims should be ordered to individual arbitration, her class allegations should be stricken, and her PAGA claim should be stayed pending resolution of the arbitration

MOTION TO COMPEL ARBITRATION OF INDIVIDUAL CLAIMS AND STAY

concerning Plaintiff's individual claims.

## III.   THE COURT SHOULD COMPEL PLAINTIFF'S CLAIMS TO INDIVIDUAL ARBITRATION UNDER 9 U.S.C. § 2

Plaintiff's first eight claims for: (1) violation of California Labor Code § 1198 (Unpaid Overtime); (2) violation of California Labor Code § 226.7 (unpaid meal period premiums); (3) violation of California Labor Code § 226.7 (unpaid rest period premiums); (4) violation of California Labor Code §§ 1194, 1197, and 1197.1 (unpaid minimum wages); (5) violation of California Labor Code §§ 201 and 202 (final wages not timely paid); (6) violation of California Labor Code §226(a) (non-compliant wage statements); (7) violation of California Labor Code §§ 2800 and 2802 (failure to reimburse for necessary business expenses); and (8) violation of California Business & Professions Code §§ 17200, *et seq*., must be referred to individual arbitration. The liberal federal policy favoring arbitration agreements creates a strong presumption in favor of enforcement, and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses J. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983), *superseded by statute on other grounds*. "[T]he Arbitration Act requires courts 'rigorously' to 'enforce arbitration' agreements according to their terms, including terms that specify *with whom* the parties choose to arbitrate their disputes and *the rules* under which that arbitration will be conducted." *Epic Sys. Corp. v. Lewis*, 200 L. Ed. 2d 889, 899 (U.S. 2018) (quoting *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013)); *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011); *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010).

In ruling on a motion to compel arbitration, the Court's role is to determine "(1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (citing *Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 84 (2002)). "If the response is affirmative on both counts, then the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms." *Chiron Corp. v. Ortho Diagnostic*

MOTION TO COMPEL ARBITRATION OF INDIVIDUAL CLAIMS AND STAY

*Sys., Inc.,* 207 F.3d 1126, 1130 (9th Cir. 2000). The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Id.* (citation omitted).

### A.   There Is A Valid Arbitration Agreement Between The Parties.

#### 1.   Plaintiff and Defendant Entered into a Valid Arbitration Agreement.

Whether the parties have agreed to arbitrate is governed by state-law principles of contract formation. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). A party's signature on a contract is a manifestation of assent to its terms. *See Stewart v. Preston Pipeline Inc.*, 134 Cal. App. 4th 1565, 1588–89 (2005) (finding a party's signing a contract manifests assent to its terms, and that a party's failure to actually read the contract's provisions is not a defense to enforcement of its terms); *Macaulay v. Norlander*, 12 Cal. App. 4th 1, 6 (1992), *opinion modified* (Jan. 5, 1993) (finding respondents "were bound by the provisions of the client agreement regardless of whether they read it or were aware of the arbitration clause when they signed the document").

Here, as shown, Plaintiff agreed to the terms and conditions of the Agreement, including the binding arbitration provision and class action waiver. (Liceaga Decl., Exs. A-B.) The agreement was clear on its face—in fact, Step 4 of the program is titled "**Arbitration Rules and Procedures**"—and all of the provisions governing arbitration procedure, including the class action waiver were prominent and clearly delineated. (*Id.*, Ex. A at p. 7.) Specifically, Plaintiff electronically signed an Acknowledgement Form for the Agreement which required Plaintiff to confirm her understanding of the Agreement, and in relevant part required her to acknowledge, in relevant part, that: "By accepting employment with Panda I elect to participate in the fourth step of binding arbitration as described in the MVM Program Rules and Procedures, should the need arise." (*Id.*, Ex. A.)

By electronically signing the Agreement, Plaintiff entered into a legal agreement to

MOTION TO COMPEL ARBITRATION OF INDIVIDUAL CLAIMS AND STAY

arbitrate her claims. *See Metters v. Ralphs Grocery Co.*, 161 Cal. App. 4th 696, 701 (2008) ("ordinarily one who signs an instrument which on its face is a contract is deemed to assent to all its terms"). The fact that the Agreement was signed electronically and not physically is of no legal consequence, as the law does not distinguish between electronic and physical signatures.

Rather, under both federal and California law, one can enter into a valid contract by electronically signing or acknowledging agreement (*e.g.*, clicking a box or typing one's name) and such electronic signature must be afforded the same weight and effect as a physically written signature. The Electronic Signatures in the Global and National Commerce Act ("E-SIGN"), 15 U.S.C. § 7001 *et seq*., validates the use of electronic signatures, electronic records, and electronic agents. The statute provides that "notwithstanding any statute, regulation, or other rule of law . . . with respect to any transaction in or affecting interstate or foreign commerce – (1) a signature, contract, or other record relating to such transaction may not be denied legal effect, validity or enforceability solely because it is in electronic form; and (2) a contract relating to such transaction may not be denied legal effect, validity, or enforceability solely because an electronic signature or electronic record was used in its formation." 15 U.S.C. § 7001(a). Further, under California Civil Code § 1633.7(a), an electronic signature has the same legal effect as a handwritten signature. Simply, courts do not distinguish between pen-and-ink signatures and electronic signatures of the type at issue here. As such, Plaintiff's electronic signature has the same legal effect as if Plaintiff had physically signed her name.

Thus, by signing the Acknowledgement Form for the Agreement and not subsequently opting out, Plaintiff plainly and objectively communicated her consent to be bound by its terms.

> **2.     Though It is Not Defendant's Burden to Address Here, Plaintiff in Fact Has No Defense to Enforcement of the Arbitration Agreement.**

Defendant's burden is to show that Plaintiff entered into an arbitration agreement

10

MOTION TO COMPEL ARBITRATION OF INDIVIDUAL CLAIMS AND STAY

concerning the claims she pursues (individually, and on a class basis). By signing the Agreement, Plaintiff plainly and objectively communicated her consent to its terms.

Moreover, any arguments Plaintiff raises concerning unconscionability and the class action waiver are bound to fail. "In order to establish [a defense of unconscionability], the party opposing arbitration must demonstrate that the contract . . . is <u>both</u> procedurally and substantively unconscionable." *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1260 (9th Cir. 2017) (emphasis added). The Agreement is neither. As explained further below, the Agreement is <u>bilateral</u> (i.e., requires the arbitration of claims that either side may have against the other), and it goes far beyond the minimum requirements that the courts utilize in assessing unconscionability. (Liceaga Decl., Ex. A, p. 8.) In addition, any objections to the class action waiver would be unavailing. Therefore, the Agreement must be enforced.

### a. The Agreement is Not Procedurally Unconscionable

"The procedural element of unconscionability focuses on 'oppression or surprise due to unequal bargaining power.'" *Poublon*, 846 F.3d at 1260 (quoting *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 236 (2012)). "Oppression arises from an inequality of bargaining power which results in no real negotiation and an absence of meaningful choice . ... Surprise involves the extent to which the terms of the bargain are hidden in a 'prolix printed form' drafted by a party in a superior bargaining position." *Roman v. Super. Ct.*, 172 Cal. App. 4th 1462, 1469 (2009) (citations and quotation marks omitted). California courts acknowledge that employer-employee arbitration agreements often have some elements of adhesion due to the unavoidable nature of the employer-employee relationship. Case law, however, makes it clear that this fact—by itself—does not invalidate such arbitration agreements. *See Armendariz v. Found. Health Psychcare Services, Inc.*, 24 Cal. 4th 83, 115 (2000) ("arbitration is favored in this state" even if "[i]n the case of preemployment arbitration contracts, the economic pressure exerted by employers ... may be particularly acute ... .). Thus, courts routinely enforce arbitration agreements that are signed by employees so long as they are clearly set forth in a conspicuous manner. *See*, *e.g. Roman v. Super. Ct.*,

11

172 Cal. App. 4th at 1470–71 (arbitration agreement in employment application enforceable where it was conspicuous); *see also Lagatree v. Luce, Forward, Hamilton & Scripps*, 74 Cal. App. 4th 1105, 1127 (1999) ("the cases uniformly agree that a compulsory predispute arbitration agreement is not rendered unenforceable just because it is required as a condition of employment or offered on a 'take it or leave it' basis.").

Here, the Agreement that Plaintiff signed is plainly set forth in a distinct dispute resolution document that also contains a section on Frequently Asked Questions, which distills the major provisions of the Agreement. [Liceaga Decl., Ex. A, pp. 1-3.] Thus, there is no basis upon which Plaintiff can support a finding of procedural unconscionability. Additionally, the Agreement permitted Plaintiff a 60-day period in which to elect not to participate in the Agreement. The Agreement was clear on its face and provided Plaintiff ample time to review, understand, and even opt out of the Agreement. Thus, there is no basis upon which Plaintiff can support a finding of procedural unconscionability.

### b.    The Agreement is Not Substantively Unconscionable

*Armendariz* remains the leading case on the basic standards for assessing whether an arbitration agreement signed by an employee is unconscionable under California law. In that case, the California Supreme Court explained that the inquiry concerning substantive unconscionability focuses on whether the arbitration agreement is "overly harsh" or leads to "one-sided" results. *Armendariz*, 24 Cal. 4th 83 at 114. In analyzing that question, the court confirmed that a "modicum of bilaterality" is required in the employment context.

Here, "the Associate **and the Company** agree to resolve through arbitration all claims described in or contemplated by Article 2 above." [Liceaga Decl., Ex. A, p. 8, Dismissal/Stay of Court Proceeding (emphasis added).] The Agreement further clarifies, that "[t]his means that **neither the Associate nor the Company** can file a civil lawsuit in court against the other party relating to such claims. If a party files a lawsuit in court to resolve claims subject to arbitration, **both agree** that the court shall dismiss the lawsuit

MOTION TO COMPEL ARBITRATION OF INDIVIDUAL CLAIMS AND STAY

and require the claim to be resolved through the MVM program." [*Id*. (emphasis added).] Simply, there is nothing unilateral, illusory or even one-sided about the Agreement. It goes well beyond a mere "modicum of bilaterality," and any attempt to recast language that is addressed to the worker in an effort to explain his/her rights as a one-sided obligation to arbitrate is an obvious misreading of the contract.

The *Armendariz* court also confirmed certain minimum requirements for the lawful arbitration of rights pursuant to a mandatory employment arbitration agreement. The court held that such an agreement is enforceable if it: "(1) provides for neutral arbitrators, (2) provides for more than minimal discovery, (3) requires a written award, (4) provides for all of the types of relief that would otherwise be available in court, and (5) does not require employees to pay either unreasonable costs or any arbitrators' fees or expenses as a condition of access to the arbitration forum. *Armendariz*, 24 Cal. 4th at 102, abrogated in part by *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011). In this case, the Agreement satisfies each of these requirements and contains several *additional* protections for the signing associate as well.

First, it guarantees the neutrality of the arbitration by requiring administration of the arbitration by and selection of the arbitrator through the AAA and mandating that the arbitration be "held before a neutral, third-party Arbitrator." [Liceaga Decl., Ex. A, p. 7.] The only requirement is that the arbitrator must have "experience deciding employment disputes."(*Id.*) So long as that condition is met, the arbitrator is either selected by a strike out procedure wherein both sides have the opportunity to strike an arbitrator from a panel of seven neutrals until one remains, or appointment of an arbitrator by the AAA.  (*Id.*)

Second, the Agreement provides for substantial discovery. The Agreement allows for initial disclosures, interrogatories, document requests, depositions, and additional discovery upon the showing of appropriate justification and permission of the arbitrator. [*Id*., pp. 9-10.]

*ACTIVE 53052769v2*

Third, the Agreement states that "the Arbitrator shall mail to the parties a written decision" within 30 days of the arbitration hearing as required by *Armendariz*. [*Id.*, p. 12.]

Fourth, upon a finding of liability, the Agreement grants the arbitrator "the same power and authority as would a judge to grant any substantive relief, including costs and attorney's fees, that a court could grant, in conformance with applicable principles of common, decisional and statutory law in the relevant jurisdiction." [*Id.*, p. 13.] Thus, it does not curtail any remedies that would be available in court.

And finally, the Agreement protects Plaintiff from any unreasonable costs of accessing arbitration and the arbitrator's fees or expenses by stating that "[a]n Associate initiating arbitration shall pay the cost of arbitration up to a maximum of the least of one (1) day's base pay or One Hundred Twenty-Five Dollars ($125), whichever is less. Upon filing the request for arbitration, the Associate shall remit such fee. The Company shall pay the remainder of the costs of the arbitration." [*Id.*, p. 13.] Thus, the Agreement satisfies each of the five factors outlined by the *Armendariz* court and for all these reasons, the Agreement is not procedurally unconscionable.

### c.   The Agreement's Class Action Waiver is Enforceable

In the event Plaintiff contends that the class action waiver in the Agreement renders it unenforceable, such arguments would fail. "In the Federal Arbitration Act, Congress has instructed federal courts to enforce arbitration agreements according to their terms—including terms providing for individualized proceedings." *Epic Sys. Corp. v. Lewis*, 200 L. Ed. 2d 889, 897 (U.S. 2018). "Class action waivers – even waivers that are obtained as a condition of employment and that limit employees' ability to vindicate statutory employee protections – are not categorically invalid or unenforceable." *Franco v. Arakelian Enterprises, Inc.*, 234 Cal. App. 4th 947, 956 (2015), *as modified* (Mar. 11, 2015). That is because "the FAA precludes any order requiring class action arbitration of wage and hour claims unless the parties have affirmatively agreed to it." *Id.* (citing *Stolt-Nielsen S.A. v. AnimalFeeds International Corp.*, 559 U.S. 662 (2010)). In other words,

14

*ACTIVE 53052769v2*

"a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so." *Id.* Plainly, "a contract defense 'conditioning the enforceability of certain arbitration agreements on the availability of classwide arbitration procedures' is inconsistent with the [FAA]." *Epic Sys. Corp.* 200 L. Ed. 2d at 910.

In *Franco v. Arakelian Enterprises, Inc*, the court held that a class action waiver was enforceable because "far from affirmatively agreeing to submit disputes concerning employment wage and hour claims to class action arbitration, the parties have agreed to forego class action treatment of any such claims." *Franco*, 234 Cal. App. 4th at 956; *see also Marenco v. DirecTV LLC*, 233 Cal. App. 4th 1409, 1421 (2015) (rejecting argument that "class action waiver [signed by employee] was unenforceable"). The Agreement here presents the same scenario: an arbitration agreement that expressly precludes any form of class proceeding. Therefore, the class action waiver must be enforced and does not render the Agreement unenforceable.

## B. The Agreement Requires Arbitration Of All Of Plaintiff's Individual Claims.

The agreement to arbitrate covers all of Plaintiff's individual claims. "[B]ecause the scope of an arbitration agreement is a matter of contract, [the Court] must look to the express terms of the agreements at issue" to determine whether the parties intended the dispute at issue to be arbitrated. *Ferguson v. Corinthian Colleges, Inc.*, 733 F.3d 928, 937–38 (9th Cir. 2013); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983) ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."); *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1072 (9th Cir. 2013) (same).

Here, there can be no doubt that Plaintiff's individual claims are subject to a binding agreement to arbitrate. The Agreement encompasses "all employment-related legal disputes, controversies or claims arising out of, or relating to, employment or cessation of employment, whether arising under federal, state or local decisional or

15

MOTION TO COMPEL ARBITRATION OF INDIVIDUAL CLAIMS AND STAY

ACTIVE 53052769v2

statutory law," with the exception of PAGA which is expressly made non-arbitrable. [Ex. A, p. 7.][1]

Counts 1 through 7 for : (1) violation of California Labor Code § 1198 (Unpaid Overtime); (2) violation of California Labor Code § 226.7 (unpaid meal period premiums); (3) violation of California Labor Code § 226.7 (unpaid rest period premiums); (4) violation of California Labor Code §§ 1194, 1197, and 1197.1 (unpaid minimum wages); (5) violation of California Labor Code §§ 201 and 202 (final wages not timely paid); (6) violation of California Labor Code §226(a) (non-compliant wage statements); and (7) violation of California Labor Code §§ 2800 and 2802 (failure to reimburse for necessary business expenses) all clearly fall within the scope of the Agreement because they constitute "employment-related legal disputes, controversies or claims arising out of, or relating to, employment or cessation of employment, whether arising under federal, state or local decisional or statutory law." (*See id.*) Finally, Plaintiff's Violation of Business & Professions Code § 17200 *et seq.* claim is derivative of the previously addressed seven claims, and thus falls within the scope of the Agreement for the prior-stated reasons.

## C. **Plaintiff's PAGA Claim Should Be Stayed Pending Individual Arbitration.**

The FAA provides:

If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such

---

[1] As noted above, the parties' agreement to arbitrate does not extend to a PAGA claim. See Ex. A, p. 11("The Arbitrator shall not have the power or jurisdiction to hear an arbitration as a class action, collective action or representative action, whether or not the claim is alleged by the Associate in a 'private attorney general' capacity."). Indeed, the employee (who signed the agreement) is not the true party in interest on a PAGA claim. See *Canela v. Costco Wholesale Corporation*, 971 F.3d 845, 852 (9th Cir. 2020) (PAGA is a "'type of qui tam action' in which the 'government entity on whose behalf the plaintiff files suit is always the real party in interest in the suit.'" (quoting *Iskanian v. CLS Transp. L.A., LLC*, 59 Cal.4th 348, 173 Cal.Rptr.3d 289, 327 P.3d 129, 148 (2014)).

16

ACTIVE 53052769v2

arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, ***shall*** on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement.

9 U.S.C. § 3 (emphasis added).

Thus, the FAA requires the balance of this action be stayed while the parties proceed to arbitration on the non-PAGA Labor Code claims. We further note that Plaintiff's claim for PAGA penalties is intertwined with her underlying Labor claims to be arbitrated. Here, Plaintiff's PAGA claim <u>and</u> her individual claims each turn on alleged unpaid or underpaid wages, failure to provide meal and rest period premiums, failure to provide compliant wage statements, failure to reimburse business expenses, and failure to timely pay final wages.  Her derivative PAGA (though seeking civil penalties) relies on these underlying violations. *See Arias v. Superior Court*, 46 Cal. 4th 969, 987 (2009) ("Recovery of civil penalties under the [PAGA] requires proof of a Labor Code violation…"). As such, state and federal courts in California routinely stay PAGA claims while overlapping Labor Code claims are adjudicated through arbitration. *See*, *e.g. Franco v. Arakelian Enter. Inc*., 234 Cal. App. 4th 947, 965–66 (2015) ("Because the issues subject to litigation under the PAGA might overlap those that are subject to arbitration . . . the trial court must order an appropriate stay of trial court proceedings"); *Jacobson v. Snap-on* 2015 WL 8293164 *1, *2 (N.D. Cal. 2015) ("Court grants the motion to compel arbitration . . . outside the PAGA claims. The PAGA portion of the case will remain with the Court and is stayed pending the outcome of the arbitration"). This case is no different. Accordingly, the PAGA claim should be stayed pending arbitration of Plaintiff's individual claims.

## IV.   <u>CONCLUSION</u>

For the forgoing reasons, Defendant respectfully request that this Court enter an order compelling individual arbitration of Plaintiff's claims (as noted, and arbitration

17

MOTION TO COMPEL ARBITRATION OF INDIVIDUAL CLAIMS AND STAY

already has been commenced on Defendant's counterclaim), and staying the PAGA claims before this Court pending the outcome of such arbitration.

Respectfully submitted,

Dated:  November 3, 2020                    GREENBERG TRAURIG, LLP


By              *Mark D. Kemple*

Mark D. Kemple
Radha D.S. Kulkarni
Attorneys for Defendant
PANDA RESTAURANT GROUP, INC.

MOTION TO COMPEL ARBITRATION OF INDIVIDUAL CLAIMS AND STAY

ACTIVE 53052769v2