R. Rex Parris (SBN 96567)
Kitty K. Szeto (SBN 258136)
Slyvia Torres-Guillen (SBN 164835)
John M. Bickford (SBN 280929)
Ryan A Crist (SBN 316653)
**PARRIS LAW FIRM**
43364 10th Street West
Lancaster, California 93534
Telephone:  (661) 949-2595
Facsimile:   (661) 949-7524

Attorneys for Plaintiff and the Putative Class

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIFER SPARGIFIORE, an individual, for herself and all members of the putative class,<br><br>            Plaintiff,<br><br>     v.<br><br>PANDA RESTAURANT GROUP, INC., a California Corporation; and DOES 1 through 100, inclusive,<br><br>            Defendants. | Case No.:  2:20-cv-09837-AB-(MRWx)<br><br>**CLASS ACTION**<br><br>**PLAINTIFF JENNIFER SPARGIFIORE'S OPPOSITION TO DEFENDANT'S EX PARTE APPLICATION**<br><br>Date:          None Set<br>Time:          None Set<br>Courtroom:  7B<br>Judge:        Hon. Andrè Birotte Jr.<br><br>Complaint Filed:  December 11, 2019<br>Trial Date:           None Set |

## OPPOSITION

In a stunning reversal of its prior representations, Defendant Panda Restaurant Group, Inc. ("Panda") or ("Defendant") now asks the Court to do what Plaintiff had requested *prior to moving for remand*. Faced with near certain sanctions for its frivolous and repeat gamesmanship, Panda now attempts to completely circumvent the Court's discovery order on the issue and pretend like it didn't waste Plaintiff and the Court's time on removal. This is unfortunately the *third* time Panda has tried this *exact* same tactic and the third time Panda has been admonished by the Central District. Indeed, Plaintiff gave Panda *every opportunity* to provide the requisite discovery prior to filing a motion for remand, but Panda unequivocally told her to pound sand. *See* Dkt. 11-2, Ex. H. (Defendant refusing to provide any jurisdictional discovery prior to her filing of a motion for remand). Now, it's essentially giving the Court the same message, i.e., that it has *no intention* of complying with the Court's ruling. Panda should *not* get a "free pass" and allow its frivolous statements to get by without any scrutiny, especially because this is the third offense. If the Court is inclined to provide such a pass, it should sanction Panda for the legal fees it forced Plaintiff to incur for having to oppose a removal that Panda itself concedes is improper.

### I.  PANDA'S EX PARTE IS DESIGNED SPECIFICALLY TO CIRCUMVENT THE COURT'S ORDER AND AVOID SANCTIONS FOR ITS BAD ACTS.

On February 4, the Court found "it appears likely that at least one of the [CAFA] exceptions applies," namely, "where more than one-third or more than two-thirds of the proposed class members are citizens of [the forum] State." Dkt. 23 at 2. Indeed, the Court found "[i]t seems almost certain that more than one-third—and very likely the vast majority—of such class members are also citizens of California, but the Court cannot find that an exception applies without evidence of class members' citizenship." *Id.*

Accordingly, the Court made the following orders:

- "<u>Within two weeks of the issuance of this Order</u>, Defendant must provide Plaintiff with the names, last known addresses, phone number, hire date, and,

      where relevant, termination date of all members of the putative class. This information is in the sole possession of Defendant."

- "<u>Within two weeks of receipt of the above</u>, the parties must meet and confer about whether any of the exceptions to CAFA apply."
- "**Thereafter**, the parties are welcome to stipulate to remanding the action"
- "If Defendant denies that any exception applies, then <u>within three days of meeting and conferring</u>, the parties must submit a Stipulation and Proposed Order setting a briefing schedule for supplemental briefing on whether the CAFA exceptions apply."

Dkt. 23 at 3 (emphasis added).

      The Court then commented "[t]his Court fully agrees with and adopts Judge Fischer's reasoning, along with her admonitions regarding awarding fees and the potential for Rule 11 sanctions." Dkt. 23. at 2. "It is unfortunate that, despite being ordered by Judge Fischer to produce similar data in the recent past, Defendants refused to do so voluntarily in this case, necessitating Plaintiff's motion and the Court's expenditure of its scarce resources on this issue." *Id.* at 2–3.

      Now with the threat of sanctions looming, Panda attempts to bury its own representations once again. In truth, this is *not* an ex parte to "remand action forthwith without violating third party privacy interests"—it's an ex parte to seek relief from a Court's order with the threat of sanctions looming.

## II. <u>PANDA'S ATTEMPT TO ACCUSE THIS COURT, JUDGE FISCHER, AND THE NINTH CIRCUIT OF VIOLATING PRIVACY RIGHTS FALLS FLAT.</u>

      Panda says by ordering it to provide the class members' contact information, this Court has run afoul of the California constitution. Dkt. 24 at 3. In doing so, Panda contends the Ninth Circuit and Judge Fischer *also* violated the California constitution by issuing and upholding <u>the exact same orders</u>. In *Adams*, the defendant (represented by the same counsel here) sought CAFA removal for a wage-and-hour representative action. *Adams v. W. Marine Products, Inc.*, 958 F.3d 1216 (9th Cir. 2020). Like here, Panda's

counsel ignored the home-state exceptions and forced the plaintiff to address the exceptions blindly via remand motion. *Id.* The District Court found it was the plaintiff's burden to show "*some* facts" regarding the class members' citizenship, and granted the plaintiff "leave to take jurisdictional discovery to establish the applicability of the exception." *Id*. at 1219. It then allowed the plaintiff to renew a remand motion after the plaintiff obtained the discovery. *Id.*

Notably, <u>Panda's counsel never raised the issue of privacy in *Adams*, nor did they argue that a *Belaire-West* letter was necessary</u>. In fact, they *willingly* produced the contact information: "In response to Adam's discovery requests, West Marine produced a list of contact information (including name, phone number, last known personal address, hire date, and, where relevant, termination date) in its possession for the . . . putative class members." *Adams v. W. Marine Prod., Inc*., 958 F.3d at 1219.

The same order was issued in *Tapia*, where Judge Fischer ordered this exact same defendant "to provide Plaintiff with the names, last known addresses, and other contact information for all members of the proposed class with last known addresses outside of California within three weeks." *Tapia v. Panda Express, LLC*, No. CV162323DSFRAOX, 2016 WL 10987316, at *1 (C.D. Cal. June 7, 2016). Panda did not object to this order, nor were any privacy concerns raised. Instead, it just stipulated to remand to avoid Judge Fischer's threat of sanctions.

Ultimately, these orders are well aligned with privacy principles, and a *Belaire-West* letter is not an express requirement to the provision of contact information. While a *Belaire-West* letter *can* alleviate any *potential* privacy concerns, it is not an absolute bar to discovery. *Belaire-West Landscape, Inc. v. Superior Court* (2007) 149.Cal.App.4th 554, 560–62 (contact information for fellow employees in putative wage and hour class actions is routinely discoverable and is "not particularly sensitive, as it [is just] contact information, not medical or financial details"). The disclosure of the class contact information is not so serious as to outright deny discovery. This is *especially* true given the potential options Parties have to assuage privacy concerns as discussed below.

## III. PANDA DID NOT EVEN TRY TO COMPLY WITH THE ORDER OR SEEK ANY OTHER ALTERNATIVES TO PROVIDING THIS ROUTINELY DISCOVERABLE INFORMATION.

Instead of trying to comply with the Court's order in any way, Panda rushes into Court demanding an *immediate* remand on an ex parte basis when no emergency exists.[1] But Panda fails to address why no alternatives exist. Instead, it concedes there was absolutely no effort to try and provide Plaintiff with the information ordered by the Court.

### A. Panda had a duty to find feasible means of production prior to moving ex parte.

As the California Supreme Court repeatedly reminds us, "the party asserting a privacy right must establish a legally protected privacy interest, an objectively reasonable expectation of privacy in the given circumstances, and a threatened intrusion **that is serious**." *Williams v. Superior Court*, 3 Cal. 5th 531, 559 (2017) (citing *Hill v. National Collegiate Athletic Assn.*, 7 Cal. 4th 1, 38 (1994)). In addition, "the party seeking protection may **identify feasible alternatives** that serve the same interests or protective measures that would diminish the loss of privacy" and the "court must then balance these competing considerations." *Id.* (emphasis added). Here, Panda did not even attempt to try any "feasible alternatives," which are abundant.

For example, many forms of protection exist, such as "a protective order prohibiting disclosure of any received contact information outside the confines of a specific lawsuit." *Williams v. Superior Court*, 3 Cal. 5th at 559 (citing *Hill v. National Collegiate Athletic Assn.*, 7 Cal.4th at 38 [if the "intrusion is limited and confidential information is carefully shielded from disclosure except to those who have a legitimate need to know, privacy concerns are assuaged"]). Defendant did not even try to assuage any of the class members' privacy concerns with a protective order before moving ex parte.

Moreover, if the Court is inclined to require a *Belaire-West* notice, Plaintiff is willing

---

[1] Notably, Panda does not cite to *any* authority demonstrating why ex parte relief granting remand is appropriate. If that was the case, Plaintiff would have requested such relief months ago.

to share the cost with Panda and provide it to the putative class members prior to Panda's release of the contact information. If Panda was truly concerned with the class members' contact information, its ex parte could have simply requested more time to complete a *Belaire-West* process, or the Parties could have stipulated to the procedure. However, at no point did Panda ever suggest even trying a *Belaire-West* letter or asking whether Plaintiff would agree to its usage.

### B. By Refusing to Cooperate with Plaintiff's *Many* Discovery Attempts on this Issue, Panda Has Self-Imposed this Issue on Itself.

When moving on an ex parte basis, the moving party must show they will be "irreparably prejudiced if the underlying motion is heard according to noticed motion procedures." Ex Parte Applications, Rutter Group Prac. Guide Fed. Civ. Pro. Before Trial Ch. 12-F. "Second, it must be established that the moving party is *without fault* in creating the crisis or that the crisis occurred as a result of *excusable* neglect." *Id.* (italics in original). The Court's Local Rules track this language: "[u]nless the Court in its discretion otherwise allows, no discovery motions may be filed or heard on an ex parte basis absent a showing of irreparable harm or prejudice not attributable to the lack of diligence of the moving party." L.R. 37-3. Panda's ex parte to bypass the Court's Order Staying Motion for Remand Pending Jurisdictional Discovery is an ex parte regarding discovery obligations. Panda does not even try to argue these elements are met, i.e., that it will be irreparably harmed should the discovery order proceed. Rather, by unequivocally telling Plaintiff she will *never* get this discovery and forcing her to file a motion for remand, this dispute is entirely manufactured by Panda.

Moreover, this Court regularly reminds counsel of the high burden they bear when applying for relief on an ex parte basis: "On this Court's website, under a heading for "Ex Parte Applications," there is a citation to *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 491–92 (C.D. Cal. 1995). Defendants are expected to read and familiarize themselves with that case. In relevant part, it states:

> When an ex parte motion is filed, .... [t]he judge drops

5

PLAINTIFF JENNIFER SPARGIFIORE'S OPPOSITION TO DEFENDANT'S EX PARTE APPLICATION

> everything except other urgent matters to study the papers. It is assumed that the tomatoes are about to spoil or the yacht is about to leave the jurisdiction and that all will be lost unless immediate action is taken. Other litigants are relegated to a secondary priority. The judge stops processing other motions. Even hearings or trials—where a courtroom full of deserving users of the court are waiting—are often interrupted or delayed. It is rare that a lawyer's credibility is more on the line, more vulnerable, than when he or she has created this kind of interruption. Lawyers must understand that filing an ex parte motion, whether of the pure or hybrid type, is the forensic equivalent of standing in a crowded theater and shouting, "Fire!" There had better be a fire.

*Wilson Sporting Goods Co. v. Monsta Athletics, LLC*, No. EDCV1900738ABSSX, 2020 WL 5835322, at *1 (C.D. Cal. Mar. 12, 2020). As addressed above, there is no "fire" here that cannot be resolved via alternative means. Instead, the only "fire" Panda seeks to put out is the impending sanctions that will likely be imposed against it.

In addition, by filing a removal in which CAFA exceptions obviously apply, Panda has unilaterally placed *all* of the class members' contact information at issue. If it was so worried about the class members' contact information, it would not have willingly and knowingly injected it into the litigation for the third time. There can be no doubt Panda *and* its counsel knew this information would become directly relevant in assessing the CAFA exemptions. Thus, by rendering CAFA a mere litigation game and delay tactic, Panda has no one to blame but itself for having to produce this information for review.

Finally, Plaintiff propounded written discovery seeking this information *twice*, but Panda has never even responded. She served written discovery seeking the class contact information in state court on January 6, 2020. However, Panda did not provide a response because the state court issued a stay until the October 2020 status conference. Instead, on

PLAINTIFF JENNIFER SPARGIFIORE'S OPPOSITION TO DEFENDANT'S EX PARTE APPLICATION

the eve of that status conference, Panda frivolously removed the case to avoid having to proceed with the discovery phase. Plaintiff reviewed Panda's removal papers immediately and recognized the obvious need for Panda to produce the class contact information. As such, she propounded written discovery again on November 3, 2020, mere days after Panda removed the action. To date, Panda has never once responded to this discovery. Panda could have *easily* participated in the discovery process and the Parties could have completed the *Belaire-West* process months ago. However, Panda ignored Plaintiff and her discovery requests this entire time.

## IV. PANDA *STILL* "DENIES THAT ANY EXCEPTION APPLIES," LEAVING OPEN THE POSSIBILITY OF ANOTHER FRIVOLOUS REMOVAL, SO THE COURT SHOULD ADJUDICATE THE ISSUE.

In its order, the Court stated "if Defendant denies that any exception applies," then the Parties must file a stipulation and proposed order for a briefing schedule to determine whether the exceptions are met." Dkt. 23. Still, Defendant unequivocally maintains that "it is not obvious" any of the CAFA exceptions apply. Dkt. 24 at 6:21–10:19 (*still* arguing "Panda's removal to federal court was proper" and that "it also is not obvious that an abstention doctrine applies in any event"). In other words, Panda still thinks removal is proper and is reserving its right to remove again. Obviously, Panda's insistence on maintaining federal jurisdiction is proper while *also* asking for remand is problematic. As the Court will recall, Panda's initial removal was based entirely on a class member who allegedly moved out of California during the pendency of the litigation. *See* Dkt. 16 at 11:22–23. Panda waited *ten months* to spring removal on Plaintiff when it was tactically advantageous to do so. It's entirely likely Panda will once again remove this action if a class member moves out of California, then *again* refuse to provide the jurisdictional discovery. The Court should put a stop to these frivolous arguments once and for all and prevent further repeat offenses from occurring again.

/ / / /

/ / / /

V. **PANDA SHOULD PRODUCE THE CONTACT INFORMATION OR BE SANCTIONED FOR REJECTING PLAINTIFF'S OFFER TO STIPULATE PRIOR TO REMAND.**

A. **Panda Resorted To This *Same* Bad Faith Litigation Tactic Three Times Already.**

This is now the third time Panda has frivolously removed a class action without addressing the home-state exception and the third time Panda has been told its position is incorrect. **This is now a third repeat and willful violation of Rule 11**. As this Court *just* said, "[f]aced with this exact scenario in a case against this same Defendant, Judge Fischer ordered Defendant to produce evidence relevant to class members' citizenship so that it could be ascertained whether an exception applied." Dkt. 23 (citing *Tapia v. Panda Express, LLC*, No. CV162323DSFRAOX, 2016 WL 10987316, at *1 (C.D. Cal. June 7, 2016)). "This Court fully agrees with and adopts Judge Fischer's reasoning, along with her admonitions regarding awarding fees and the potential for Rule 11 sanctions." Dkt. 23. at 2. "It is unfortunate that, despite being ordered by Judge Fischer to produce similar data in the recent past, Defendants refused to do so voluntarily in this case, necessitating Plaintiff's motion and the Court's expenditure of its scarce resources on this issue." *Id.* at 2–3.

The same thing happened in *Romo v. Panda Restaurant Group., Inc.,* No. CV 12-00996 GAF OPX, 2012 WL 3930346, at *1 (C.D. Cal. Sept. 7, 2012). Panda removed the case under CAFA, once again refusing to address these exceptions in its removal papers. *Id.* Shortly after removal, the Court ordered Panda to show cause as to why the case should not be remanded "because Defendants bear the burden of establishing jurisdiction over this matter, and because it appears from the face of the complaint that the home state exception is applicable, they (defendants) must either allege, or come forward with evidence competent to demonstrate that less than two thirds of the class members are from California." Dkt 20--2, Ex. P. Ultimately, Panda's bad faith tactics forced both the *Romo* plaintiff *and* Panda to hire expensive independent experts and file reports analyzing the class members' locales. *Romo*, 2012 WL 3930346, at *1. Not surprisingly, this revealed "**97 percent of the**

**prospective class members remain domiciled in California."** *Id.* at *2 (emphasis in original).² Amazingly, Panda *still* opposed remand, despite the court finding its arguments "unavailing for obvious reasons." *Id.* at *3. The court then remanded the action under the local-controversy exception, finding it "common sense" that the class members remained domiciled in California. *Id.* at *4 ("It is relevant and inferential evidence to support the common sense notion that people who live in California overwhelmingly tend to stay here.").

Despite these prior orders that were directly on point, Panda did the *same* thing here and then mocked Plaintiff for not having access to the class members' records in her remand motion. Accordingly, Plaintiff seeks meaningful relief to stop Panda's frivolous removals. If the Court is inclined to grant Panda's admission that remand is proper *without* complying with the jurisdictional discovery order, Plaintiff requests such an order be accompanied by an award of the legal fees and costs Plaintiff incurred in the amount of $15,925.00. Dkt. 20-1 at ¶¶ 6–9; Dkt. 20 at 16:6–18. She seeks this relief not only for herself, but for the future plaintiffs and courts who will inevitably have to deal with Panda's violations of Rule 11 and 28 U.S.C. § 1927.

### B. This Dispute is Entirely of Panda's Making Despite Plaintiff's Best Efforts to Avoid It, and Panda Should Bear the Consequences.

Panda tries to place the blame on Plaintiff's reluctance to immediately remand the case. However, as the Court will recall, Plaintiff tried all possible alternatives to avoid a full remand motion. Indeed, Plaintiff requested this evidence *three months ago*, but Panda unequivocally refused to provide it. Just two days after receiving Panda's removal papers, Plaintiff sent Panda's counsel a detailed meet-and-confer letter regarding this precise issue in the hopes of avoiding a full remand motion. Dkt. 11-2, Ex. F. Plaintiff noted Panda's removal papers blatantly ignored the obvious CAFA exemptions and stated "since

---

² The class definition in *Romo* is almost identical to this case, meaning there is already unequivocal evidence in published authority stating the class members are likely all domiciled in California. *Compare Romo*, 2012 WL 3930346 at *1 ("All non-exempt or hourly paid employees who worked for Defendants within four years to the filing of the complaint.") *with* Dkt. 1-1 at ¶ 35 ("All current and former hourly-paid or non-exempt employees employed by Defendants within the State of California at any time during the period from December 11, 2015 to final judgment.").

Defendant is unwilling to analyze whether these exemptions apply, we seek a 'list of contact information (including name, phone number, last known personal address, hire date, and, where relevant, termination date)' in [Defendant's] possession for all putative class members." *Id.* at 3. "Because Defendant made claims pertaining to this information (but did not provide it), this information should be readily available for review." *Id.* Plaintiff then requested to conduct the Rule 26(f) conference so that such discovery could proceed. *Id.* "In conclusion, we ask that you stipulate to remand this action to its proper jurisdiction. Alternatively, we ask that you produce all documents and testimony pertaining to your untimely removal papers, including the same kind of information produced in *Adams* so the Court can determine on its own whether the home-state exemptions are met." *Id.*

Panda utterly refused to provide the discovery *or* to conduct a Rule 26(f) conference, thereby forcing Plaintiff to file an expensive motion for remand.

## CONCLUSION

Plaintiff respectfully requests the Court deny Panda's ex parte application which results from an issue entirely of its own making. If the Court is inclined to grant Panda's ironic request without the need to for Panda to produce the contact information, sanctions in the amount of $15,925.00 should *certainly* be imposed against Panda and/or its counsel of record for forcing Plaintiff (and the Court) to file a motion challenging Panda's frivolous removal.

Dated: February 9, 2021                    **PARRIS LAW FIRM**

                                           By:     */s/ Ryan A. Crist*
                                                Kitty K. Szeto
                                                Sylvia Torres-Guillen
                                                Ryan A. Crist
                                                Attorneys for Plaintiff
                                                and the Putative Class